

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|                                          |   |                       |
|------------------------------------------|---|-----------------------|
| LAWRENCE DILLON,                         | ) |                       |
|                                          | ) |                       |
|                      Plaintiff,          | ) | Case. No. 07-C-3652   |
|             v.                           | ) |                       |
|                                          | ) | Magistrate Judge      |
| MICHAEL J. ASTRUE,                       | ) | Arlander Keys         |
| Commissioner of Social                   | ) |                       |
| Security                                 | ) |                       |
|                      Defendant.          | ) |                       |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Lawrence Dillon, moves this court for Summary
Judgment, pursuant to Rule 56(a) of the Federal Rules of Civil
Procedure, to reverse or remand the final decision of the
Commissioner of Social Security (the "Commissioner"), who denied
his claim for Supplemental Security Income ("SSI"). 42 U.S. C.
§ 401 et seq. (West 2007). Defendant Commissioner has filed a
Cross-Motion for Summary Judgment. For the reasons set forth
below, the Court denies Commissioner's Cross-Motion for Summary
Judgment, grants Plaintiff's Motion for Summary Judgment, and
remands this matter back to the Commissioner for proceedings
consistent with this Opinion.

### FACTS AND PROCEDURAL HISTORY

Mr. Dillon applied for SSI on September 10, 2003, alleging a
disability onset date of January 1, 1990, due to depression,
personality disorder, borderline intellectual functioning,

tremors, and heart problems. R. 63-64. The Commissioner denied Plaintiff's application initially on November 17, 2003, and upon reconsideration on August 9, 2004. R at 32. Plaintiff requested an administrative hearing, which was held on April 6, 2006 before Administrative Law Judge ("ALJ") John Kraybill. R. 277. The ALJ heard testimony from Plaintiff. Vocation Expert ("VE") Christopher Yep was also present at the hearing.

After considering the testimony and reviewing the limited medical evidence, the ALJ issued a decision denying Plaintiff's application on July 25, 2006. Plaintiff filed a Request for Review with the Social Security Administration's Appeals Council, which was denied on May 1, 2007. As such, the ALJ's Opinion represents the final decision of the Commissioner. The Plaintiff filed suit in the Northern District of Illinois on June 28, 2007, and the matter was subsequently assigned to this Court.

## PLAINTIFF'S TESTIMONY AT THE HEARING

Plaintiff was born on March 17, 1951 and was 55 years old at the time of his administrative hearing. Plaintiff testified that, although he attended college and majored in physical education, he did not have a college degree. Plaintiff testified that he last worked in 1985, and that he had stopped working after he received a DUI. R. 285. Plaintiff admitted that he had received four DUI's and no longer had a driver's license. R. 285-86.

2

Plaintiff testified that he lived with his girlfriend, sometimes in hotels, sometimes in shelters, and sometimes on the streets. He testified that his girlfriend received disability checks, and that he received food stamps, but he stated that he does not have insurance or a medical card.

Plaintiff testified that he had stopped using alcohol in November of 2005, prior to undergoing surgery to implant a pacemaker. Plaintiff had his pacemaker implanted at Christ Hospital in Oak Lawn, on November 17, 2005. Prior to undergoing surgery, Plaintiff received treatment for alcohol withdrawal at Christ Hospital for two weeks. R. 290-291.

In addition to having a pacemaker implanted and being treated for alcohol withdrawal, Plaintiff discussed his foot neuropathy with the physicians at Christ Hospital[1]. Plaintiff testified that the doctors concluded that bad circulation and alcohol had caused the neuropathy in his feet, and that the nerve damage he suffered would not improve, even if he stopped using alcohol. R 292.

Plaintiff also described his physical limitations, stating that he can walk and sit for only one hour at a time; that he can lift approximately 10 pounds, but only carry that weight for a short distance; that he suffers from chest pains; and that even though he rides a bicycle more than six miles to get to doctors'

---

[1] While Plaintiff requested the records corresponding to his neuropathy from Christ Hospital, he never received them.

3

appointments, he has to makes several stops to rest along the way.

Plaintiff stated that his mental impairments also prevented him from working. He explained that he suffered from depression and anxiety. R. 290. Plaintiff testified that he was admitted to Madden Mental Health Center under the name of Andrew Raymond Donner[2]. R. 288. In addition, Plaintiff claimed that he received treatment for mental conditions at Christ Hospital and English Hospital, but stated that he was unable to produce verifying records, because both hospitals indicated that they had destroyed Plaintiff's medical records. R. 188-89. In addition, Plaintiff testified that he had received treatment for mental impairments from Dr. Lee Weiss at Community Care Options in Western Springs, between 2003 and 2005. R. 294.

Finally, Plaintiff explained that he only takes medications when his physicians give him samples. Dr. Weiss frequently gave Plaintiff samples of Innopran and Zoloft for depression, R. 293-94. However, Plaintiff has never taken medication for his heart. R. 293.

---

[2] Plaintiff received treatment at Madden in November of 1998. Plaintiff testified that, over the years he had sought medical treatment under different names, because he had an outstanding warrant for his arrest for sleeping in a hallway. R. 282-84, 288.

4

**SUMMARY OF MEDICAL EVIDENCE**

Plaintiff was hospitalized at Madden Mental Health facility for suicidal ideation while undergoing detox treatment for alcohol dependence in November of 1998. R. 214-27.

In February of 2001, Plaintiff went to the Hinsdale Hospital Emergency Room, complaining of right knee pain. R. 152-160. Five days prior, Plaintiff had injured his knee after blacking out from alcohol while riding a bicycle. X-rays of the right knee demonstrated a nondisplaced V-shaped fracture. R. 159. Venous evaluation demonstrated no evidence of major deep venous thrombosis, R. 158, and Plaintiff was diagnosed with knee fracture and alcohol abuse. R. 153.

One year later, Plaintiff was hospitalized at Westlake Hospital for alcohol withdrawal with secondary seizure activity. R. 120-48. Plaintiff received treatment at Westlake between February 16 and 20, 2002. Plaintiff indicated to his physicians that he lived alone in a shelter, had stopped working five years earlier, and had used alcohol for many years. R. 121. An examination revealed that Plaintiff was in no acute distress; had tremors "on and off;" was drowsy but arousable; had normal motor system and tone; 5/5 power; intact cranial nerves; and was sensitive to light touch. R. 122, 130. A CT scan of the head showed mild cortical atrophy but no acute lesions. R. 123, 148. During Plaintiff's hospital stay, he was treated with seizure

medication and for bradycardia, prior to being discharged. R.
123. Upon his discharge from Westlake Hospital, Plaintiff
immediately went to the emergency room at Hinsdale Hospital. R.
150. Plaintiff complained of tremors and alcohol withdrawal, but
did not want to be admitted to detox.

From January of 2003 through October of 2003, Plaintiff was
seen at The Pillars Community Service. R. 177-79. Plaintiff's
mental health provider, Dr. Weiss, observed that Plaintiff had
normal posture, gait, motor activity and hygiene, but depressive
symptoms. Dr. Weiss noted that Plaintiff was "unemployed, barely
able to perform daily life skills, unable to drive a car" and had
"no interest in hobbies, family, etc." R. 177-78. Dr. Weiss
observed Plaintiff to be angry, moody, miserable; and that
Plaintiff had coherent, negative and angry speech; was confused;
and blamed God for everything. Plaintiff had "OK" memory
calculation, abstract thinking, similarities and difference, and
judgment. R. 179. Dr. Weiss diagnosed Plaintiff with depression,
borderline personality disorder, and alcohol dependence.
Plaintiff received medication and counseling during this time. R.
179. Dr. Weiss opined that Plaintiff was unable to do work-
related activities, such as responding appropriately to people,
co-workers, or supervisors,. R. 179.

In November of 2003 and January of 2004, two state agency
psychologists reviewed Plaintiff's medical records and assessed

Plaintiff's condition. R. 180-90. The psychologists opined that Plaintiff was capable of performing simple, routine tasks in areas that required only casual contacts with others when sober. R. 182.

On February 23, 2004, state agency physician Erika B. Altman, Ph.D., completed a Mental Residual Functional Capacity ("MRFC") form and PRTF of Plaintiff. On the MRFC form, Dr. Altman found Plaintiff moderately limited in his ability to perform activities within a schedule, to maintain regular attendance, to be punctual within customary tolerances, to accept instruction and criticism from supervisors, and to get along with coworkers and peers. R. 180-81. Dr. Altman further opined that Plaintiff's daily activities were moderately impaired and that he was capable of performing simple, routine tasks in areas that require only casual contacts with others when sober. R. 182.

Dr. Altman also evaluated Plaintiff under Listing 12.04 Affective Disorders, and found Plaintiff to suffer from depressive syndrome, characterized by anhedonia, or pervasive loss of interest in almost all activities and sleep disturbance. R. 184. Under Listing 12.08 Personality Disorders, Dr. Altman found that Plaintiff had inflexible and maladaptive personality traits, which cause either a significant impairment in social or occupational functioning, or subjective distress. R. 187. Under Listing 12.09 Substance Abuse Disorders, Dr. Altman found that

7

Plaintiff has behavioral changes or physical changes associated with the regular use of substances that affect the central nervous system. Finally, Dr. Altman found Plaintiff moderately limited in both restriction of activities of daily living and difficulties in maintaining social functioning; and mildly limited in difficulties in maintaining concentration, persistence or pace. R. 188.

From November 11, 2005 until November 21, 2005, Plaintiff was hospitalized at Christ Hospital for alcohol withdrawal delirium. R. 232-69. Plaintiff was drinking one quart of vodka and smoking one pack of cigarette each day, when he could get the money. Plaintiff was in no acute distress, was grossly tremulous, and appeared very anxious. His extremities revealed no edema, and pedal pulses were strong. R. 233. Plaintiff had 1 to 2 beats of clonus and was grossly hyperflexic. Motor strength was unremarkable, and Plaintiff had intact sensation. R. 236. Plaintiff experienced several brief sinus pauses, and a pacemaker was recommended. Additional testing and evaluation was ordered. Plaintiff was seen for suicidal ideation, was alert and oriented, and had appropriate affect and depressed mood. After consulting with his physician, Plaintiff requested that medications be discontinued, because he was considering a pacemaker. Plaintiff was deemed to be competent to make decisions, and had a pacemaker

implanted. R. 229-30, 254-55. Plaintiff was stabilized post-operatively and discharged

Plaintiff's attorney arranged for Plaintiff to be examined by Dr. Dianne Stevenson of Stevenson Psychological Services. Dr. Stevenson completed a psychological report on January 7, 2006. R. 192. Dr. Stevenson found Plaintiff's working memory and processing speed to be low average; his ability to perform mental arithmetic to be low average; and his ability to problem solve in social situations and to replicate geometric patterns with colored blocks to be low average. R. 194. Plaintiff's arithmetic score was at the fifth grade level, which is below the level necessary for performing daily living tasks. On a personality evaluation, Dr. Stevenson found Plaintiff's results to indicate significant elevations in the areas of schizophrenia, paranoia, and depression; and noted that Plaintiff is anxious, fearful, depressed, tends toward bizarre thinking, and has significant health concerns. R. 195. Dr. Stevenson noted that Plaintiff endorsed 20 items of somatic symptoms, 14 items of depression and suicidal ideation, 14 items of acute anxiety, 12 items of depression and worry, 12 items of persecutory ideation, 9 items of deviant beliefs, and 9 items of mental confusion. R. 195.

Dr. Stevenson determined that Plaintiff's intellectual functioning was in the low average to average range, but that

Plaintiff was unable to hold a job due to his poor ability to get along with people and his alcohol abuse. Dr. Stevenson diagnosed Plaintiff with a recurrent major depressive disorder, alcoholic dependence in early remission, and schizotypal personality disorder with stressors, and determined that Plaintiff had a GAF of 55. Dr. Stevenson concluded that objective testing indicated a marked disturbance in emotional and psychological functioning, and that Plaintiff was "unable to function in a normal work-like setting or to manage his own affairs without supervision." R. 196. Dr. Stevenson found Plaintiff's prognosis for substantial improvement was poor due to his depression and personality disorder.

Dr. Stevenson also completed a MRFC, finding Plaintiff markedly limited in his ability to understand, remember, and carry out instructions; his ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to complete a normal workday and week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and the ability to set realistic goals or make plans independently of others. R. 197. Dr. Stevenson also found Plaintiff to be moderately limited in a number of areas

10

including: the ability to understand and carry out simple work-related decisions, to interact with the general public, and to accept instructions and criticism from supervisors.

Finally, Dr. Stevenson completed a PRF, finding that Plaintiff's mental impairments fall under Listing 12.04 Affective Disorders, due to a depressive syndrome, characterized by anhedonia or pervasive loss of interest in almost all activities, sleep disturbance, feelings of guilt or worthlessness, difficulty concentrating, thoughts of suicide and hallucinations, delusions or paranoid thinking. R. 202. Dr. Stevenson also evaluated Plaintiff under Listing 12.08 Personality Disorders, and found Plaintiff to have inflexible and maladaptive personality traits, which cause either significant impairments in social or occupational functioning or subjective distress. R. 208. Dr. Stevenson opined that Plaintiff is markedly limited in maintaining social functioning and concentration, persistence or pace, moderately limited in restriction of activities of daily living, and that he has suffered from three repeated episodes of decompensation of extended duration. R. 209.

**THE ALJ's DECISION**

The ALJ determined Plaintiff's impairments of alcohol dependence and resulting implantation of a pacemaker to be "severe." The ALJ labeled as "not credible" Plaintiff's testimony regarding the intensity, persistence, and limiting

effects of his symptoms, and concluded that they were almost entirely related to his use of alcohol. R. 20  The ALJ noted that Plaintiff had a history of multiple arrests for public intoxication; that he has had five DUI's; and that he has been hospitalized on several occasions following bouts of drinking. R. 20.

The ALJ discussed Plaintiff's minimal outpatient psychiatric treatment at Pillars' Community Services, and the fact that he had been prescribed Zoloft and Buspar in the past. However, Plaintiff stopped taking these drugs, because he could not afford them, and because he did not believe he needed these medications. R. 20.

The ALJ noted that Plaintiff had been evaluated in January of 2006 by psychologist Dr. Stevenson, and found the results of Dr. Stevenson's objective testing to be largely unremarkable. Dr. Stevenson opined that Plaintiff had marked emotional and psychological disturbances, rendering him unable to function in normal work-like settings. However, the ALJ discounted the value of Dr. Stevenson's conclusions, because Plaintiff sought this evaluation through attorney referral, and because Dr. Stevenson was presumably paid for the report. R 21.

The ALJ stated that Plaintiff had not received the type of medical treatment one would expect for a totally disabled individual, and that he repeatedly failed to follow up on

12

treatment recommendations to seek substance abuse rehabilitation, abstain from alcohol, and to take his psychotropic medications. The ALJ acknowledged Plaintiff's claim that he cannot afford these medications and treatments, however, he further noted that Plaintiff admitted to spending large sums of money daily on both liquor and cigarettes and that he failed to seek low income or free health care options. R. 21.

The ALJ determined that Plaintiff had the RFC to "perform work at all exertional levels involving simple routine tasks with only casual interaction with others." R. 19. Because Plaintiff had no past relevant work, the transferability of job skills was not an issue. Finally, the ALJ concluded that, in light of Plaintiff's age, education, work experience, and RFC, Plaintiff could perform a number of jobs existing in significant numbers in the economy and that Plaintiff was not, therefore, disabled.

### STANDARD OF REVIEW

A district court reviewing an ALJ's decision must affirm if the decision is supported by substantial evidence and is free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla"; rather, it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In reviewing an ALJ's decision for substantial evidence, the

13

Court may not "displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citing *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003)). Where conflicting evidence allows reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the courts. *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990).

An ALJ must articulate his analysis by building an accurate and logical bridge from the evidence to his conclusions, so that the Court may afford the claimant meaningful review of the SSA's ultimate findings. *Steele*, 290 F.3d at 941. It is not enough that the record contains evidence to support the ALJ's decision; if the ALJ does not rationally articulate the grounds for that decision, or if the decision is not sufficiently articulated, so as to prevent meaningful review, the Court must remand. *Id.*

## SOCIAL SECURITY REGULATIONS

An individual claiming a need for SSI must prove that he or she has a disability under the terms of the SSA. In determining whether an individual is eligible for benefits, the social security regulations require a sequential five step analysis. First, the ALJ must determine if the claimant is currently employed; second, a determination must be made as to whether the claimant has a severe impairment; third, the ALJ must determine

14

if the impairment meets or equals one of the impairments listed
by the Commissioner in 20 C.F.R. Part 404, Subpart P, Appendix 1;
fourth, the ALJ must determine the claimant's Residual Functional
Capacity ("RFC"), and must evaluate whether the claimant can
perform his or her past relevant work; and fifth, the ALJ must
decide whether the claimant is capable of performing work in the
national economy. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir.
1995). At steps one through four, the claimant bears the burden
of proof; at step five, the burden shifts to the Commissioner.
*Id.*

## DISCUSSION

Plaintiff first argues that the ALJ wrongfully determined
that Plaintiff's alcohol addiction was a contributing factor
material to Plaintiff's disability, contrary to 20 C.F.R. §
416.935 and POMS DI 90070.050, and that the ALJ ignored the
evidence establishing Plaintiff's mental impairments as
disabling, despite his alcohol abuse.

The Commissioner attacks Plaintiff's argument on the grounds
that the ALJ was not required to determine what role alcohol
addiction played in influencing Plaintiff's health, because the
ALJ never found that Plaintiff was actually disabled. A
disability determination, the Commissioner argues, is a condition
precedent to the application of 20 C.F.R. § 416.935 and POMS DI
90070.050.

In 1996, Congress amended the Social Security Act, directing the Commissioner to deny disability benefits when an applicant's drug or alcohol abuse comprises a contributing factor material to the determination of disability. 42 U.S.C. § 423 (d)(2)c. The applicant bears the burden of demonstrating that he is disabled despite his addiction. However, in the event of a "tie" - that is, if the ALJ is unable to determine the impact the claimant's addiction has on the applicant's disability- the benefit of the doubt goes to the applicant and benefits are awarded. *Brueggemann v. Barnhart,* 348 F.3d 689, 693 (8th Cir. 2003)

The Commissioner's regulations instruct ALJs on the appropriate procedure for weighing evidence of addiction. 20 C.F.R. § 404.1535(b) provides that "[t]he key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol. . . In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based *our current disability determination,* would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling." The Eighth, Ninth and Tenth Circuits have each held that "[t]his language plainly requires the existence of a 'current disability determination' before the substance use

disorders are even considered.'" *Brueggemaen,* 348 F.3d at 694 n.2.; *see also, Bustamante v. Massanari,* 262 F.3d 949, 955 (9th Cir.2001); *Drapeau v. Massanari,* 255 F.3d 1211, 1214 (10th Cir. 2001). The Seventh Circuit has cited to each of these cases favorably in support of this proposition. *See Kangail v. Barnhart,* 454 F.3d 627, 628-29 (7ᵗʰ Cir. 2006).

Thus, the Commissioner is correct that the above-cited regulations, which the Plaintiff claims the Commissioner violated, do not come into play unless and until the ALJ decides that the applicant is disabled. The problem with the Commissioner's position, however, is that the ALJ's opinion indicates that he improperly considered Plaintiff's alcohol addiction prior to determining whether Plaintiff was disabled-which does, in fact, violate the regulations.

In his opinion, before discussing whether the evidence supported a conclusion that Plaintiff was disabled, the ALJ rejected Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms as not credible, and states that they "*are related almost entirely to his unremitting use of alcohol.*" R. 20 (emphasis added). As such, the ALJ improperly considered the purported cause of Plaintiff's symptoms- ie, his alcohol abuse- before determining whether those symptoms were disabling. *Brueggemaen,* 348 F.3d at 694 (the ALJ's initial task is to weigh the claimant's symptoms and not to

inquire into the cause of those symptoms); *Bustamante,* 262 F.3d
at 955 ("Here, the ALJ erred by concluding at step 2 that
Bustamante's 'behavioral and emotional conditions' were 'the
product and consequence of his alcohol abuse and not an
independently severe or disabling impairment.'")
Because the ALJ acknowledged that Plaintiff had an impairment,
but diminished the impact of those impairments, at least in part,
because of Plaintiff's alcohol abuse, the ALJ erred.  *Compare
Kangail,* 454 F.3d at 629 (rejecting evidence of the plaintiff's
mental condition because the ALJ improperly attributed the
condition to her drug and alcohol abuse).  As such, the Court
must remand the matter back to the Commissioner.

     Upon remand, the ALJ should take the opportunity to correct
other errors in his Opinion.  Primarily, the Court is troubled by
the ALJ's indication that Dr. Stevenson's findings, which
supported Plaintiff's claim of disability, were unreliable
because Plaintiff's attorney arranged for Dr. Stevenson's
evaluation of Plaintiff and because Dr. Stevenson was likely paid
for the evaluation.

In the instant case, the ALJ rejected[3] Dr. Stevenson's
findings without analyzing his clinical findings and without
identifying other, inconsistent medical evidence in the Record.
To the contrary, Dr. Stevenson's findings were, arguably,
consistent with Dr. Weiss's records[4]. Moreover, they were
supported, at least in part, by Dr. Altman's conclusion that
Plaintiff suffered from depression, borderline personality
disorder and alcohol dependence, that Plaintiff's activities of
daily living were moderately impaired, and that Plaintiff's
social functioning was moderately limited. Instead, the ALJ
rejected Dr. Stevenson's findings because she was hired- and
presumably paid-- by Plaintiff's attorney. The Court does not
mean to suggest that Dr. Stevenson's findings are credible or
that the ALJ should have assigned any weight to those findings.
However, the ALJ's failure to analyze the clinical findings and
to compare those to other evidence in the Record leaves the Court
in the dark as to whether he gave appropriate consideration to
the report.

_____

[3] To the extent that the Commissioner argues that Dr.
Stevenson's clinical findings do not support a disabling
impairment, the Court notes that the ALJ did not make such a
finding. As such, the Commissioner cannot rely on this basis to
bolster the ALJ's opinion or to defeat Plaintiff's argument.
*Golembiewski v. Barnhart,* 322 F.3d 912, 916 (7th Cir. 2003).

[4] The ALJ also downplays Dr. Weiss's findings, without
sufficiently explaining why this treating physician's opinions
were not entitled to full weight.

Next, the Court agrees that the ALJ relied selectively upon Dr. Altman's findings. In formulating Plaintiff's mental RFC, the ALJ noted that he was relying upon the opinions of the State Agency physicians in concluding that Plaintiff could perform work at all exertional levels involving simple routine tasks with only casual interaction with others. However, there is no indication that the ALJ[5] took into account – or reasonably rejected-- Dr. Altman's conclusions that Plaintiff was moderately limited in the ability to perform activities within a schedule, maintain regular attendance, and to be punctual within customary tolerances. In addition, there is no discussion of Dr. Altman's findings that Plaintiff was moderately limited in the ability to accept instructions or respond to criticism; that Plaintiff had an affective disorder, personality disorder, was mildly limited in difficulties in maintaining concentration, persistence and pace; and that Plaintiff had anxiety, reduced concentration, forgetfulness, anger and difficulty performing tasks.

SSR 85-16 requires an ALJ to consider a claimant's mental impairments in "a detailed assessment of the individual's capacity to perform and sustain mental activities which are

_____

[5] The Commissioner argues that, pursuant to POMS DO 25020.010, the ALJ was free to ignore everything but the narratives written by the state psychologists in Section III of the MRFCAFs. The Court disagrees that the regulations permit the ALJ to disregard the majority of the MRCAFs in the manner described by the Commissioner, and the Commissioner has not identified any caselaw supporting such an interpretation.

critical to work performances." SSR 96-8p requires the ALJ to
assess a claimant's functional limitations and work-related
abilities on a function by function basis. In this case, the
ALJ's statement that Plaintiff was limited to only casual contact
with others fails to adequately articulate a rejection of the
limitations cited by Dr. Altman, or to account for those
limitations by assessing them on a function by function basis.
*See Witt v. Barnhart,* 446 F. Supp. 2d 886, 898-99 (N.D. Ill.
2006).

Finally, the Court agrees that the ALJ erred by relying
exclusively on the Medical-Vocational Guidelines, or "the GRID",
in determining that Plaintiff was not disabled. The Commissioner
claims that the ALJ reasonably relied upon the GRID as a
framework for finding Plaintiff not disabled, based upon 20
C.F.R. Pt. 202, Subpt. P. App. 2, sec. 2000.00(d)-(e). However,
SSR 83-14 clarifies that the Grid is merely a starting point when
a claimant's non-exertional impairments must also be considered.
At a minimum, the ALJ should have consulted a vocational
resource, such as the Dictionary of Occupational titles to
determine whether work exists in significant numbers in the
national economy that Plaintiff could perform. 20 C.F.R. sec.
416.920(g). The ALJ's decision indicates only that the ALJ
relied upon the Grid, without analyzing Plaintiff's limitations

and without consulting a vocational resource or expert. The
Court directs the ALJ to correct the error upon remand.

## CONCLUSION

For the reasons set forth above, the Court Denies the
Commissioner's Motion for Summary Judgment, and Grants
Plaintiff's Motion for Summary Judgment, remanding the matter
back to the Commissioner for proceedings consistent with this
Opinion.

Dated: May 8, 2008        E N T E R:

Arlander Keys

ARLANDER KEYS
United States Magistrate Judge

22